James KNIGHT, Petitioner,

v.

INTERNATIONAL HARVESTER
CREDIT CORPORATION, et al.,
Respondents.

No. C–329.

Supreme Court of Texas.

Jan. 13, 1982.

Rehearing Denied Feb. 24, 1982.

Susman & McGowan, Franci N. Beck, Houston, McVicker & Evans, Wilson McVicker, Jr., Lufkin, for petitioner.

Thompson & Knight, Stephen F. Fink, Dallas, John Fleming, Lufkin, for respondents.

POPE, Justice.

James Knight filed suit against Etex International, Inc., hereafter referred to as Etex, and International Harvester Credit Corporation, hereafter referred to as IHCC. Knight purchased a used International dump truck from defendant Etex in March, 1978. He asserted violations of Chapter 7 [1] and Chapter 14,[2] Tex.Rev.Civ.Stat.Ann. art. 5069, Consumer Credit—Consumer Protection Act. Knight also alleged that the defendants violated § 17.46(b)12 of the Texas Deceptive Trade Practices—Consumer Protection Act.[3] The trial court granted a

---

1. Chapter 7 of Title 79, or Tex.Rev.Civ.Stat. Ann. art. 5069–7.01 to 5069–7.10, governs the sale of motor vehicles in retail installment transactions. Section 7.07 provides:

   "No retail installment contract or retail charge agreement shall:

   \*     \*     \*     \*     \*     \*

   (6) Provide that the buyer agrees not to assert against the seller or holder of any claim or defense arising out of the sale . . . ."

2. Chapter 14, repealed by 1979 Tex.Gen.Laws, ch. 672, § 51, at 1595, dealt with alternative disclosure requirements in coordination with federal law. See 1975 Tex.Gen.Laws, ch. 184, § 1, at 421. Knight alleged violations of arti-

cles 5069–14.04 and 5069–14.17. Article 5069–14.04 provided:

   "(b) Charges or premiums for credit-life, accident, or health insurance written in connection with any consumer-credit transaction shall be included in the finance charge . . . ."
Article 5069–14.17 provided:

   "(a) In connection with each consumer-credit sale not under an open-end credit plan, the creditor shall disclose each of the following items which is applicable:

   \*     \*     \*     \*     \*     \*

   (7) the finance charge expressed as an annual percentage rate . . . ."

3. Section 17.46(b) provides:

summary judgment in favor of both defendants, and the court of civil appeals affirmed that judgment. 613 S.W.2d 531 (Tex.Civ.App.—Beaumont 1981). We affirm that part of the summary judgment that Knight recover nothing on his claim under Chapter 14 of the Consumer Credit—Consumer Protection Act. We reverse the summary judgment that Knight take nothing on the other two claims.

Chapter 14 of the Consumer Credit Act

Knight alleged that the installment contract provided by Etex and IHCC violated various provisions of Chapter 14 of the Consumer Credit Act. The contract was signed and became effective on March 23, 1978, and suit was filed in the district court on October 24 of the same year. The Texas Legislature repealed Chapter 14 effective August 27, 1979. The question thus presented is whether the repeal terminated Knight's right to seek recovery under Chapter 14 when his suit was then pending. The courts below held that it did in the absence of a savings clause as to pending suits.

■ This court has frequently held that if a cause of action is based on a statute, the repeal or amendment of that statute without a savings clause for pending suits is given immediate effect. As stated in *Dickson v. Navarro County Levee Improvement District No. 3*, 135 Tex. 95, 99–100, 139 S.W.2d 257, 259 (1940):

It is almost universally recognized that if a statute giving a special remedy is repealed, without a saving clause in favor of pending suits, all suits must stop where the repeal finds them; and, if final relief has not been granted before the repeal goes into effect, it cannot be granted thereafter. A like general rule is that if a right to recover depends entirely upon a statute, its repeal deprives the court of jurisdiction over the subject matter.

This rule was restated in *National Carloading Corp. v. Phoenix—El Paso Express,*

"[T]he term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts:

\* \* \* \* \* \*

*Inc.*, 142 Tex. 141, 152, 176 S.W.2d 564, 568 (1943):

[I]f final relief has not been granted before the repeal goes into effect it cannot be granted thereafter, even if a judgment has been entered and the cause is pending on appeal. The general rule is that when such law is repealed without a saving clause, it is considered, except as to transactions past and closed, as though it had never existed.

*See also Ciminelli v. Ford Motor Credit Co.*, 612 S.W.2d 671, 672 (Tex.Civ.App.—Corpus Christi), *rev'd on other grounds*, 624 S.W.2d 903 (Tex.1981); *Jim Walter Homes, Inc. v. Gibbens*, 608 S.W.2d 706, 712–13 (Tex.Civ. App.—San Antonio 1980, writ ref'd n. r. e.); *Ford Motor Credit Co. v. Zapata*, 605 S.W.2d 362, 364 (Tex.Civ.App.—Beaumont 1980), *rev'd on other grounds*, 615 S.W.2d 198 (Tex.1981); *Aetna Insurance Co. v. Richardelle*, 528 S.W.2d 280, 284 (Tex.Civ.App. —Corpus Christi 1975, writ ref'd n. r. e.).

■■ The cardinal rule to be observed in any case involving statutory interpretation is that a court must look to the intent of the legislature and must construe the statute so as to give effect to that intent. *State v. Terrell*, 588 S.W.2d 784, 786 (Tex.1979); *Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 780 (Tex.1975). The legislature could have included a savings provision in favor of pending Chapter 14 suits had it intended that such suits be preserved. Absent such a clause, we cannot presume that the legislature intended to alter the general rule that a repeal terminates existing statutory causes of action.

Knight maintains that his Chapter 14 cause of action is preserved by the general savings provision of the Code Construction Act, Tex.Rev.Civ.Stat.Ann. art. 5429b–2 (Vernon Supp.1980–81). Section 3.11 of that Act provides:

(a) Except as provided in Subsection (b) of this section, the reenactment, revi-

(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law . . . ."

sion, amendment, or repeal of a statute does not affect

(1) the prior operation of the statute or any prior action taken under it;

(2) any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred under it;

(3) any violation of the statute, or any penalty, forfeiture, or punishment incurred in respect to it, prior to the amendment or repeal . . . .

According to Knight, Chapter 14 is part of a "code" subject to these rules of construction.

■ It is true that the Texas Consumer Credit and Consumer Protection Act, of which Chapter 14 is a part, is commonly referred to as the "Texas Consumer Credit Code." In fact, the Declaration of Legislative Intent preceding that legislation refers to it as a "comprehensive *code* of legislation." Even if the Consumer Credit and Consumer Protection Act is properly called a "code," however, it is not the type code to which the Code Construction Act was intended to apply. Section 1.01 of the Construction Act states that the purpose of the Act is to provide "rules to aid in the construction of codes (and amendments to them) *enacted pursuant to the state's continuing statutory revision program.*" Section 1.02 adds that the Act applies to "each code enacted by the 60th or a subsequent legislature *as part of the state's continuing statutory revision program.*" The preceding statute, Tex.Rev.Civ.Stat.Ann. art. 5429b–1 (Vernon Supp.1980–81), created the Texas Legislative Council, and authorized the Council to "plan and execute the statutory revision program." We conclude, therefore, that the codes to which the Code Construction Act was intended to apply are those enacted pursuant to the state's continuing statutory revision program. Since the Consumer Credit "Code" is not such a code, the provisions of the Construction Act have no application to Chapter 14. *See*

*Zapata v. Ford Motor Credit Co.,* 615 S.W.2d 198 (Tex.1981).

It is important to note that Tex.Rev.Civ. Stat.Ann. art. 5069–50.01 specifically sets out rules of construction applicable to the Consumer Credit Act. The statute provides:

Unless specifically altered by this Act or unless the context requires otherwise, the provisions of Articles 10, 11, 12, 14, 22 and 23, Revised Civil Statutes of Texas, 1925, and of Acts, 50th Legislature 1947, Chapter 359, compiled as Texas Civil Statutes, Article 23a (Vernon's 1948) apply to this Act.

Noticeably absent from this list of provisions is article 5429b–2, the Code Construction Act, even though that Act was also enacted by the 60th Legislature. None of the provisions listed in article 5069–50.01 contain a general savings clause in favor of pending suits. Had the legislature intended that the savings clause in the Code Construction Act apply to the Consumer Credit Act, it could have so specified in article 5069–50.01. We cannot do by judicial construction what the legislature has apparently chosen not to do by statutory enactment. Consequently, the Code Construction Act does not apply to the repeal of Chapter 14, and Chapter 14 causes of action not reaching final judgment prior to the repeal are not preserved by the general savings clause of the Construction Act.

### Chapter 7 of the Consumer Credit and Consumer Protection Act

Knight also complained that the installment contract he signed violated Chapter 7 of the Consumer Credit and Consumer Protection Act. Chapter 7 governs the sale of motor vehicles in retail installment transactions. One of the provisions of this chapter, article 5069–7.07(6), states that no retail installment contract shall "[p]rovide that the buyer agrees not to assert against the seller or holder of any claim or defense arising out of the sale." [4] The contract

---

4. The language of article 5069–7.07(6) was poorly drafted. It appears that the word "of" in the middle of the sentence is surplusage and

should be ignored. *See Horn v. Nationwide Financial Corp.,* 574 S.W.2d 218, 220 (Tex.Civ. App.—San Antonio 1978, writ ref'd n. r. e.).

signed by Knight contained the following clause:

"Acceptance by purchaser: By acceptance of said property, purchaser hereby waives all claims for any delay in delivery and all claims for failure to deliver any property ordered."

Knight asserts that this waiver provision violated the prohibition in article 5069–7.-07(6). The court of civil appeals found no violation and affirmed the summary judgment of the trial court. We reverse that part of the judgment.

The court of civil appeals held that the clause in Knight's contract did not violate article 5069–7.07(6) because the contract merely restated the "general law of sales" —that acceptance of goods terminates the buyer's claim for damages due to late delivery. The court apparently reasoned that the contract clause acted not as a *waiver*, but as notice to the buyer of the common law effect of his acceptance.

Prior to the adoption of the Uniform Commercial Code, it had been held that a buyer and seller could contract in writing that the damages occasioned by the seller's delay would be waived upon the buyer's acceptance of the goods. *Southern Gas & Gasoline Engine Co. v. Richolson*, 216 S.W. 158, 159–60 (Tex.Com.App., Sec. B, 1919, judgm't adopted). There was confusion in the law whether, absent a written contract, acceptance of late delivered goods amounted to a waiver of damages due to the delay. In one case, the damages for late delivery were held to be waived. *Dallas Waste Mills v. Texas Cake & Linter Co.*, 204 S.W. 868, 870 (Tex.Civ.App.—Dallas 1912), *rev'd on other grounds*, 228 S.W. 118 (Tex.Com.App. 1921, holding approved). Other cases held that damages caused by delay in delivery were not waived by a buyer's acceptance. *See, e.g., Reagan Round Bale Co. v. Dickson Car Wheel Co.*, 121 S.W. 526, 534 (Tex.Civ. App.1909, no writ):

In such case the defendant could waive the right to refuse to accept the presses and receive same holding the plaintiff responsible for any recoverable damage which the defendant may have sustained

by plaintiff's breach of contract as to the time of delivery of the presses. *The waiver of the right to refuse to accept the presses would not defeat the right to recover damages for the delay in delivery.* [Emphasis added.] *See also Saunders' Executors v. Weekes*, 55 S.W. 33, 34 (Tex.Civ. App.1900, no writ).

■ The adoption of Tex.Bus. & Com. Code Ann. § 2.607 (Vernon 1968) has clarified this uncertainty in the law. In our opinion this section was intended to remove the harshness of the rule that a buyer who had timely ordered goods from a seller, and who may already be severely damaged by the seller's delay in delivery, should be held to have waived the damages even though he accepts the goods to avoid still greater future losses. Section 2.607(b) now provides that acceptance precludes the buyer's right to reject goods, but "does not itself impair any other remedy provided by this chapter for non-conformity." One remedy provided in Tex.Bus. & Com.Code Ann. § 2.714 allows a buyer to accept goods and still recover for losses resulting from non-conformity of the seller's tender. This section also allows a buyer to sue for incidental damages, which are elsewhere defined as including reasonable expenses incident to delay. Tex.Bus. & Com.Code Ann. § 2.715(a). The collective result of these provisions of the Code is that a buyer may accept late delivery of goods and yet hold the seller liable for damages caused as a result of the delay. *See Tarter v. Monark Boat Co.*, 430 F.Supp. 1290 (E.D.Mo.1977); *Barbarossa & Sons, Inc. v. Iten Chevrolet, Inc.*, 265 N.W.2d 655 (Minn.1978); *Danjee, Inc. v. Addressograph Multigraph Corp.*, 44 N.C.App. 626, 262 S.E.2d 665 (1980). In the instant case, however, the waiver provision in the contract purported to defeat a claim for late delivery against Etex or IHCC. This waiver provision constituted an agreement "not to assert against the seller or holder any claim or defense arising out of the sale," and was thus a violation of article 5069–7.07(6).

■ Respondents Etex and IHCC argue that the clause in Knight's contract did not

violate article 5069–7.07(6) because it is not the type of waiver that this provision was intended to proscribe. According to respondents, a violation of article 5069–7.07(6) must involve language that is calculated to free the seller and the assignee of the contract from *all* claims and defenses of the buyer, except perhaps for "real" defenses good against a holder in due course under Tex.Bus. & Com.Code Ann. § 3.305 (Vernon 1968).[5] In other words, Etex and IHCC assert that a violation of article 5069–7.-07(6) is one which is so great as to involve language that attempts to make the contract *negotiable.*

We note initially that there are two separate instances in which the assignee of a sales contract may take free of the claims and defenses of the buyer. The first is when the contract is in fact negotiable. In that instance, the assignee enjoys holder in due course status if he takes the contract for value, in good faith, and without notice of claims or defenses. As a holder in due course, the assignee is subject only to the real defenses of the buyer. *See Insurance Agency Managers v. Gonzales,* 578 S.W.2d 803 (Tex.Civ.App.—Houston [1st District] 1979, no writ); Countryman, *The Holder in Due Course and Other Anachronisms in Consumer Credit,* 52 Texas L.Rev. 1, 2 (1973); Boyle, *Preservation of Claims and Defenses Under the Texas Business and Commerce Code and Under the Texas Consumer Credit Code,* 8 St. Mary's L.J. 679, 679–80 (1977). The other situation in which a buyer's defenses are terminated is one in which the sales contract contains a waiver of defenses clause. In that instance, assuming the clause is enforceable, the assignee takes free of *all* claims and defenses, regardless of whether he qualifies as a holder in due course. Navin, *Waiver of Defense Clauses in Consumer Contracts,* 48 N.C.L. Rev. 505, 505–09 (1970).

A waiver of defenses clause under some circumstances is enforceable in Texas under Tex.Bus. & Com.Code Ann. § 9.206 (Vernon Supp.1980–81). Section 9.206(a)[6] limits the effective use of such waivers, however, to situations in which the assignee takes the assignment for value, is in good faith, and has no notice of claims or defenses of the buyer. In other words, the assignee must meet the qualifications of a holder in due course, even though the contract is not necessarily negotiable. Section 9.206 also limits the effect of the waiver to personal defenses of the buyer; real defenses as defined by § 3.305 are not affected.

Section 9.206 is expressly made "[s]ubject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods ...." Respondents Etex and IHCC contend that article 5069–7.07(6), which prohibits an agreement "not to assert against the seller or holder ... any claim or defense arising out of the sale," is one of the statutes referred to in § 9.206. In other words, respondents argue that article 5069–7.07(6) was enacted to create a specific exception to § 9.206, to prevent the waiver of all of a buyer's claims and defenses in motor vehicle sales contracts, and was intended to have no other effect.

We agree with Etex and IHCC that article 5069–7.07(6) precludes the waiver of all claims and defenses in motor vehicle installment sales contracts. We do not agree, however, that the waiver prohibition of article 5069–7.07(6) was enacted for the sole purpose of providing an exception to § 9.206. Section 9.206 deals specifically with waiver provisions inserted in favor of an *assignee.* Article 5069–7.07(6), on the other hand, prohibits waivers favoring both

---

**5.** These "real" defenses include incapacity, duress, illegality, and misrepresentation. Tex. Bus. & Com.Code Ann. § 3.305 (Vernon 1968).

**6.** Section 9.206(a) provides:

Subject to any statute or decision which establishes a different rule· for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the chapter on Commercial Paper (Chapter 3).

the assignee (holder) *and* the seller. The scope of article 5069–7.07(6) is therefore broader than that of § 9.206. Had the legislature enacted article 5069–7.07(6) solely as an exception to § 9.206, there would have been no need to include the word "seller" in the article 5069–7.07(6) prohibition.

Since any ambiguities in legislation of this type must be liberally construed, *see Ford Motor Credit Co. v. Blocker,* 558 S.W.2d 493, 498 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.); *O. R. Mitchell Motors, Inc. v. Bell,* 528 S.W.2d 856, 859–60 (Tex.Civ.App.—San Antonio 1974, writ ref'd n. r. e.), we conclude that article 5069–7.07(6) forbids the waiver of *any* claim or defense a buyer might have against a seller or a holder.[7]

### Deceptive Trade Practices Act

Knight alleges that the waiver provision prohibited by article 5069–7.07(6) also contravenes § 17.46(b)(12) of the Texas Deceptive Trade Practices Act (DTPA). Section 17.46(b)(12) states that the term "false, misleading, or deceptive acts or practices" includes "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, *or which are prohibited by law.*" [Emphasis added.] A "deceptive trade practice" as defined by this section triggers the private remedies provided in § 17.50 of the Act.

■ Assuming the contract involved in this case does violate § 17.46(b)(12) of the DTPA, Knight must qualify as a "consumer" in order to assert the cause of action. *See Riverside National Bank v. Lewis,* 603 S.W.2d 169, 173 (Tex.1980). A "consumer" is defined in § 17.45(4) of the Act as "an individual, partnership, corporation, or governmental entity who seeks, or acquires by

purchase or lease, any goods or services." "Goods" are defined as "tangible chattels or real property purchased or leased for use." § 17.45(1). "Services" include "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." § 17.-45(2). These goods or services acquired by the consumer must form the basis of the DTPA complaint. *Riverside National Bank v. Lewis, supra* at 175. *See also Cameron v. Terrell and Garrett, Inc.,* 618 S.W.2d 535 (Tex.1981).

The court of civil appeals held in the present case that Knight is not a "consumer" as defined by the Act because he alleged no cause of action arising out of the purchase of a "good" or "service." According to the court, the sole basis for Knight's complaint is the extension of credit for the purchase of the vehicle. Credit is not a "good" or a "service" as defined by the code. *Riverside National Bank v. Lewis, supra.*

■ We cannot agree that the alleged violation of the DTPA deals solely with the extension of credit. Knight signed a document entitled "retail installment contract," which provided: "Purchaser hereby purchases, and seller hereby sells . . . the following described property . . . ." The property described was a 1974 International Harvester dump truck. The sale was made subject to "Additional Provisions" printed on the reverse side of the document, one of which was the prohibited waiver clause. The effect of the clause was to waive claims or defenses Knight may have had against the seller and holder. It is this clause that Knight claims violates § 17.46(b)(12) of the DTPA. Given these facts, Knight has asserted a cause of action based upon DTPA

---

7. We find no cases dealing directly with the intended scope of article 5069–7.07(6). At least one court has indirectly construed the scope in the same way that we do. In *Mockingbird AMC/Jeep, Inc. v. Hall,* 583 S.W.2d 844 (Tex. Civ.App.—Dallas), *modified on other grounds,* 592 S.W.2d 913 (Tex.1979), the buyer agreed not to sue the seller under any express or implied warranty arising out of the sale of an automobile. *This agreement did not provide*

*that the buyer would waive all claims and defenses good against the seller or holder.* The court held that the waiver was part of a separate contract between the parties and was not part of the retail installment contract. Had the provision been a part of the sales contract, however, the court noted that the waiver would have been clearly prohibited by article 5069–7.-07(6).

violations connected with the *sale of a truck*. A truck is clearly a "good" as defined by the Act. Knight is therefore a "consumer" for purposes of the DTPA.

■ We also cannot agree that Knight could be a "consumer" as to Etex, but not as to IHCC. The argument that IHCC was involved only in the extension of credit to Knight ignores the realities of the transaction. The sale contract used in this case prominently bears the insignia of IHCC at the top of the first page. The "Additional Provisions" on the reverse side contain a preprinted clause assigning the contract to IHCC. In response to interrogatories prior to summary judgment, IHCC stated that it had drafted and supplied the contract signed by Knight, and, in fact, provided most of the contracts used by Etex in the sale of its vehicles. The contract signed by Knight in this case provided both for the sale of the truck and payment over time with interest. Given these facts, we hold that Etex and IHCC were so inextricably intertwined in the transaction as to be equally responsible for the conduct of the sale.

In making the holding that Knight is a "consumer" as to IHCC, we have no difficulty distinguishing the case of *Riverside National Bank v. Lewis, supra.* In *Riverside*, Lewis, the plaintiff, purchased a new automobile and obtained financing from the Allied Bank. After Lewis failed to make the first payment, the Allied Bank loan officer asked him to move the loan to another bank. Lewis finally arranged financing with an officer of the Riverside Bank, after making unsuccessful attempts elsewhere. This officer represented to Lewis and the Allied Bank that the loan would be taken up. The refinancing was not approved by Riverside Bank, however, and Allied Bank repossessed the car and sold it at auction. Lewis sued Riverside Bank for DTPA violations in connection with the refusal to make the loan.

The court held in *Riverside* that Lewis could not qualify as a "consumer" under the DTPA because he did not seek to acquire a good or service from the bank. Rather, Lewis sought to acquire money, or the use of money, which is neither a "good" nor a "service" as those terms are defined by the Act. Since Lewis was not a "consumer" as to Riverside Bank, he could not assert a private cause of action based upon violations of the DTPA.

In reaching its holding, the court in *Riverside* emphasized the fact that Lewis sought *only* the extension of credit from Riverside Bank, and nothing more. The court noted:

In his transaction with Riverside Bank, Lewis sought only to borrow money in an effort to avoid repossession of his car. He sought to pay for the use of money over a period of time. Other than Lewis' payment for the use of money, there was nothing else for which he paid, or which he sought to acquire.

*Riverside, supra* at 173. The court also stated:

The evidence in this case establishes that Lewis approached Riverside Bank with one objective; he sought to acquire money. He attempted to obtain this money by promising to repay the indebtedness in the future with interest. Put simply, he sought to exchange future amounts of money for that amount which he desired to have in the present. There is no evidence that he sought to acquire anything other than this use of money.

*Id.* at 175. The present case is different. Knight's objective in the transaction was the *purchase of a dump truck*. The financing arranged with IHCC was merely the means of making that purchase. From the perspective of the sellers, the financing was the means of making the sale. In *Riverside*, the bank had nothing to do with the sale of the vehicle, which had taken place months before the refinancing was ever attempted. In our case, however, there was a single transaction—the sale of a truck on an installment basis. The alleged DTPA violations arose out of this transaction. Knight was a "consumer" as to all parties who sought to enjoy the benefits of that sale.

**390**

We affirm that part of the summary judgment that Knight take nothing for the claimed violation of Chapter 14 of the Consumer Credit Act. We reverse the summary judgment that Knight take nothing for the other claimed violations of Chapter 7 of the Consumer Credit Act and Section 17.-46(b)12 of the Deceptive Trade Practices Act and remand the cause to the trial court for trial.