**GALLERIA AREA FORD, INC., Appellant,**

v.

**Mark E. BROWN and Alice Faye Brown, Appellees.**

**No. B14–87–311CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 10, 1987.

Rehearing Denied Jan. 14, 1988.

Reversed May 18, 1988.

---

Ramon E. Williams, Houston, for appellant.

Carol A. Neelley, Houston, for appellees.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

MURPHY, Justice.

This is an appeal from a judgment in a suit brought under the Texas Deceptive Trade Practices Consumer–Protection Act, Texas Business and Commerce Code Annotated section 17.41 *et seq.* (Vernon Supp. 1987). The judgment, awarding $31,640 to the appellees, was entered on a jury verdict after appellees proved that employees of La Marque Ford and/or Galleria Area Ford, Inc., made misrepresentations and performed substandard repair · work on their damaged vehicle. The appellees urge this Court on appeal that Galleria Area Ford, Inc. is liable for their damages because the three individuals who subsequently incorporated under that name were in the process of purchasing and taking over La Marque Ford during the time appellee's truck was being repaired. Galleria Area Ford maintains that it had no role in the bodyshop operation of the Ford dealership for the period that appellee's truck was in that bodyshop. Appellant brings twenty-two points of error, nine of which, asserting factual insufficiency, were not properly preserved and are therefore waived in this appeal. We now address appellant's remaining points and reverse and remand.

On August 29, 1985, Mark Brown and his wife Alice Faye purchased a new Ford truck from La Marque Ford. On September 5, 1985, it was involved in an accident which caused extensive damage. The appellees arranged for the truck to be towed to the La Marque Ford's bodyshop and subsequently appraised for repair. Mr. Brown testified that he waited about three and a half weeks before authorizing La Marque to begin working on the truck, at which time he was told by the La Marque bodyshop manager, Ron Davis, that the repair work would probably take three weeks and that the truck could be returned to its pre-accident condition. However, the truck was not ready at the prescribed time and inquiries as to the status of the repairs were met only with various excuses and unreturned phone calls. Finally, on December 23, 1985 Mr. Brown was told he could pick up his truck and pay for the repairs. After doing so, he became aware of many apparent problems with the repair work. He stated that he did not know who owned or was running the Ford dealership at the time he discovered all the problems with the repair work on his truck.

On November 15, 1985, while the truck was still being repaired, a management agreement was executed contemporaneously with an agreement to purchase and sell in anticipation of the eventual sale of the assets of the La Marque Ford Dealership. The parties involved were the seller, La Marque and the buyers, Messrs. Kechler, Bott and Laughter. The agreements were set up to last for the period of time it would take the three individual buyers to receive approval from Ford Motor Company to operate as dealers. For that period of time the three buyers were given a limited amount of control and authority over the dealership's operations. Appellees did not bring suit against the three individuals.

The appellees' action for damages under the Deceptive Trade Practices Act against Galleria Area Ford, Inc. asserted that entity to be a "successor in interest" to, and "inextricably intertwined" with, La Marque Ford. Appellees argue that Galleria Area Ford, Inc. held itself out and functioned as the management in charge of the Ford dealership during and subsequent to the time their vehicle was being repaired. Before this Court now, are the special issues submitted to and answered by the jury which found Galleria Area Ford, Inc. liable.

By its first point of error appellant asserts the trial court erred in overruling its motion for new trial "because there was no evidence to support the jury's affirmative answer to special issue No. 5 inquiring whether Galleria Area Ford, Inc. represented to plaintiff that it would through its repairs restore plaintiff's truck to its pre-accident condition and then did not in fact do so." We agree.

■ In determining a no evidence point we consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are cognitive of the fact that if there is any evidence of probative force to support the finding, the point must be overruled and the finding

upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ Galleria Area Ford, Inc. argues that it offered unrebutted testimony along with documentary evidence showing it had no control over the bodyshop operation of the Ford dealership until its purchase of the facility consummated February 14, 1986. Here, the president of Galleria Area Ford, Inc., Paul Kechler, testified that under the management agreement the seller of La Marque Ford obliged the three individual buyers to continue employment of two named La Marque employees serving as executive vice president and business manager. In addition, the record also reflects that the individuals who were employed by La Marque as the service department manager, service parts manager and bodyshop manager also kept their positions for the duration of the agreements. La Marque's purported interest in continuing employment of these individuals was that if Ford Motor Company did not allow Messrs Kechler, Bott and Laughter to become Ford dealers those key people would not have been lost to La Marque. Importantly, Kechler testified that the only people he, Bott and Laughter had control over were the people in sales.

Furthermore, a provision of the management agreement provides:

La Marque Ford shall collect the gross receipts and shall pay, at cost, the labor and parts relating to, all repair work and body work performed on vehicles on the premises of the business *prior to 12:01 A.M. on November 17, 1985.* All such receipts and costs relating to vehicles delivered to the business *after that time* shall be allocated to and collected by Bott, Kechler, and Laughter. [emphasis added].

In fact, Kechler stated that through the end of December all the proceeds for the "parts department or the bodyshop were deposited in La Marque's account...." Accordingly, evidence was introduced showing a receipt of funds to La Marque Ford for repair orders. One of the entries reflected the appellees' repair expenses deposited into La Marque Ford's account De-

cember 26, 1985. Consequently, it is quite clear that a La Marque employee continued to manage the bodyshop until after appellee received his truck back from the dealership and up until Galleria Area Ford, Inc. finalized the sale of the dealership; the management agreement, operational for the period prior to February 14, 1986, provided that La Marque collect gross receipts and pay labor and parts for repair and body work in process prior to November 17, 1985; and neither Galleria Area Ford, Inc. nor the three individuals who formed it shared in the proceeds for the repair of the truck.

However, more specifically germane to appellant's first point is its argument that there was no evidence that representations were made regarding the repair of appellee's truck by anyone other than individuals clearly identified as La Marque's employees. Ron Davis, the bodyshop manager of La Marque Ford was one of the first people appellees dealt with after they had their truck towed into La Marque and subsequently worked on in late September. All of the conferences or discussions which followed concerning the faulty and defective repair work done on the truck included Mr. Davis. Others, mentioned by the appellees as being present during discussions or explanations concerning the status of the truck, included a body shop worker named Pete, who was employed by La Marque when the truck was brought in for repair and a Mr. Bob Stein. Appellees strongly assert that Stein was employed by Galleria Area Ford, Inc. as a manager, and that he exercised the authority of his position when he purportedly negotiated with Mr. Brown for the proper repair of the truck. However, it is significant that Mr. Brown did not meet with Stein until January of 1986. This was considerably after the complained of misrepresentations were made to the appellees. At that meeting Mr. Brown stated that he did not know that Stein was a manager for Galleria Area Ford, Inc. but that his insurance agent had told him this and he "assumed it". Furthermore, according to Mr. Brown, Mr. Stein made no representations at all to him; instead, Stein relied on Ron Davis who was

familiar with the situation, to supply answers to Mr. Brown's questions concerning the repair work done. By Mr. Brown's own testimony, it appears from the record that Ron Davis and perhaps other various, unnamed La Marque Ford employees made representations concerning the repair of his truck. Apparently, in September of 1985 Ron Davis made the representation to appellee that his truck could be repaired in three weeks and restored to its pre-accident condition. However, there is no evidence brought forth in the record that Ron Davis was controlled by Galleria Area Ford, Inc., or that anyone who was employed by Kechler, Bott and Laughter made such representations to the appellees.

Here, appellees argue that *Knight v. Intern. Harvester Credit Corp.*, 627 S.W.2d 382, 389 (Tex.1982), makes the party suing under the DTPA a consumer as to all parties who sought to enjoy the benefits of a transaction which constitute a violation under the Act. This argument is not applicable under the existing facts already cited in this case. As we have already pointed out, Galleria Area Ford, Inc. did not seek, or in fact profit from the transaction of which appellees now complain. This is true because of the management agreement which governed the operations of the dealership until February 14, 1986. Moreover, unrebutted testimony by Paul Kechler showed that Galleria Area Ford, Inc. did not have *control* over the bodyshop until February 14, 1986, when the sale of the dealership was final.

Furthermore, we do not find that La Marque Ford and Messrs Kechler, Bott and Laughter were "inextricably intertwined" as urged by the appellees, who once again cite *Knight.* In that case the facts involved a retail installment contract which contained a provision constituting a violation under the DTPA. Etex, the seller of the "goods" plaintiff purchased, provided the retail installment contract allowing plaintiff financing arrangements. When this contract, which had actually been drawn up by Intern Harvester Credit Corporation and bore their insignia, was found to be violative of the DTPA, IHCC argued

it only extended credit to plaintiff and that the contract really involved the seller, Etex. The Court disagreed and held that "Etex and IHCC were so inextricably intertwined in the transaction as to be equally responsible for the conduct of the sale," 627 S.W.2d at 389.

We do not find that kind of dual responsibility existing in this case, at least as to Galleria Area Ford, Inc.. The management agreement provided that losses or debts etc., arising out of any business transaction occurring prior to midnight November 17, 1985, became the sole responsibility of La Marque Ford, and Ronald M. La Marque, personally. Obviously it was not the intent of the parties on November 17, 1985 when entering into the preliminary agreements of the dealership's eventual sale that appellant or Messrs Kechler, Bott and Laughter should become liable for La Marque's past torts or statutory violations. Moreover, the only independent conduct indicating evidence of takeover of operations by Galleria Area Ford, Inc. while appellees' truck was still entrusted to the dealership, was a change in the way the dealership answered the phone. The three individuals started their take over of the sales division of the dealership and, apparently, they simultaneously instructed the phone to be answered Galleria Ford. This, without more, does not constitute probative evidence that Galleria Area Ford, Inc. became responsible for the entire dealership, past and present, by representing to the dealership, past and present, by representing to the Browns and the general public that the dealership was being conducted as an ongoing business.

Since we sustain appellant's first point of error and it is dispositive of this appeal we do not reach the remaining points now before this court. In sustaining appellant's "no evidence" point of error, we are mindful that the law generally calls for reversal of the trial court's judgment and rendition of judgment for appellant. Calvert, " 'no evidence' and 'Insufficient Evidence' Points of Error", 38 Tex.L.Rev. 361, 362 (1960). However, appellant asserted this no evidence point for the first time in its motion for new trial and in its sustained point of error Galleria Area Ford, Inc. states *only* that the court failed to grant its motion. Under such circumstances this court may only remand the case back to the trial court. *Rosas v. Shafer,* 415 S.W.2d 889 (Tex.1967); *Gillespey v. Sylvia,* 496 S.W.2d 234 (Tex.Civ.App.—El Paso 1973, no writ). We reverse and remand for Galleria Area Ford and affirm the judgment against La Marque Ford.