North American v. Houser 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-95-00439-CV







North American Van Lines, Inc., Appellant



v.



Melvin Houser and Marcella Houser, Appellees








FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT


NO. 95-0132, HONORABLE JACK ROBISON, JUDGE PRESIDING







PER CURIAM



 Appellant North American Van Lines, Inc., appeals a no-answer default judgment
rendered in favor of appellees Melvin Houser and Marcella Houser. The Housers sued North
American, Perry Pierce d/b/a Pierce Moving and Storage, and Ben Holt, alleging that a fire
destroyed Pierce's storage facility while all their property was stored within. The Housers
claimed that Pierce acted as an agent of North American and charged both with engaging in
deceptive trade practices. The Housers also charged Holt, the owner of the building that burned,
and Pierce with negligence. In rendering the default judgment against North American, the trial
court severed Pierce and Holt into a separate suit. We will reverse the judgment of the trial court
and remand the cause for a trial on the merits.


BACKGROUND


 The Housers alleged that, when they moved from Clute to San Marcos, Texas, they
stored their belongings at Pierce Moving. Pierce Moving operates a storage facility in Clute,
Texas. A fire occurred at Pierce Moving's storage facility on July 25, 1994. According to
evidence submitted by North American, it had appointed Pierce Moving as its agent for the limited
purpose of North American's operations as an interstate motor carrier of household goods. 



INTENTIONAL OR CONSCIOUSLY INDIFFERENT FAILURE TO ANSWER


 In its first point of error, North American contends that the trial court abused its
discretion in overruling its motion to set aside the default judgment. A trial court's discretion in
determining whether to set aside a default judgment is governed by the rule set out in Craddock
v. Sunshine Bus Lines:



A default judgment should be set aside and a new trial ordered in any case in
which the failure of the defendant to answer before judgment was not intentional,
or the result of conscious indifference on his part, but was due to a mistake or an
accident; provided the motion for new trial sets up a meritorious defense and is
filed at a time when the granting thereof will occasion no delay or otherwise work
an injury to the plaintiff.



133 S.W.2d 124, 126 (Tex. 1939).

 The supreme court has recently explained that a failure to answer is not intentional
or consciously indifferent merely because it is deliberate; it must also be without adequate
justification. Smith v. Babcock & Wilcox Constr. Co., 39 Tex. Sup. Ct. J. 164, 165 (Dec. 22,
1995). Proof of such justification--accident, mistake, or other reasonable explanation--negates the
intent or conscious indifference for which a new trial can be denied. Id. Conscious indifference
requires more than mere negligence. Id.; Ivy v. Carrell, 407 S.W.2d 212, 213 (Tex. 1966). In
addition, if the defendant relies on its agent to file an answer, it must show that both it and its
agent were free of conscious indifference. Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80,
83 (Tex. 1992).

 North American attached affidavits to its motion to set aside the default judgment
in support of its contention that its failure to answer was not intentional or consciously indifferent. 
Although the Housers filed affidavits in response to North American's motion, these affidavits do
not address the factual assertions made by North American. We therefore review whether North
American's motion and affidavit set forth facts that, if true, would negate intentional or
consciously indifferent conduct. Strackbein v. Prewitt, 671 S.W.2d 37, 38-39 (Tex. 1984).

 North American's affidavits show that on February 24, 1995, its registered agent
received service of citation and the petition in the Housers' lawsuit. North American's answer
was therefore due on March 20. See Tex. R. Civ. P. 99. During discussions in January 1995,
Perry Pierce, president of Pierce Moving, had assured North American that the Housers' claim
concerned an intrastate matter not involving North American and that Pierce Moving was handling
the matter. By letter dated March 9 enclosing the citation and petition, North American formally
demanded that Pierce Moving assume North American's defense. Perry Pierce affirmed that he
received the letter tendering North American's defense with the enclosed "lawsuit." In response,
Pierce assured North American that he had engaged an attorney to handle the matter. North
American, knowing that Pierce had retained counsel, believed that an answer would be filed.

 Pierce retained Gary McConnell to handle the Housers' claim. Because Pierce was
not a lawyer and had never before been sued, he did not understand the legal significance of the
tender letter and enclosed documents. Pierce therefore gave McConnell the entire file without
telling him that North American had tendered its defense to Pierce Moving, that North American
had been served, or that McConnell should prepare an answer and defense for North American. 
McConnell stated that he was not aware that North American had been served in the suit and that
Pierce never authorized him to prepare an answer and defense for North American. Because
McConnell was busy with other cases, Pierce asked McConnell on March 10 to stop working on
the Housers' suit.

 Pierce retrieved the case file from McConnell and, on March 16, delivered it to a
second attorney, Mark Davis. Again, due to his lack of legal understanding, Pierce failed to tell
Davis that North American had tendered its defense to Pierce Moving or that Davis should
prepare an answer and defense for North American; he never told Davis that North American had
been served with citation. Davis was unaware of the suit against North American or that North
American had been served. Because Pierce Moving was not served citation until March 31, Davis
believed that he had time to file an answer and he did not immediately review the file. Davis
stated that Pierce did not authorize him to prepare an answer or defense for North American. On
March 30, the Housers recovered the default judgment against North American. Pierce hired
Mark Davis on April 3.

 North American's tender of defense to Pierce Moving and its belief that Pierce
Moving would file an answer on its behalf negate any conscious indifference on its behalf. 
Strackbein, 671 S.W.2d at 39. Although the Housers argue that North American was consciously
indifferent in relying on Pierce, a nonlawyer, to file its answer, North American relied as well
on Pierce's assurance that he had hired a lawyer to handle the suit. Pierce's ignorance of the legal
significance of North American's tender letter and his failure to tell the lawyers about it is also
some excuse for not retaining Davis immediately and requesting an answer to be filed. Craddock,
133 S.W.2d at 125 (citing Dowell v. Winters, 20 Tex. 794 (1858) (attorney's mistake of law
negated intent)); see Babcock & Wilcox Constr. Co., 39 Tex. Sup. Ct. J. at 165. 

 Finally, the attorneys retained by Pierce were not aware that North American had
been served and were not requested to file an answer. E.g., Estate of Pollack v. McMurrey, 858
S.W.2d 388, 391 (Tex. 1993). Even if McConnell and Davis were negligent in not promptly
reviewing the file and discovering the tender letter and citation, negligence is not enough to show
intent or conscious indifference. Babcock & Wilcox Constr. Co., 39 Tex. Sup. Ct. J. at 165; Ivy,
407 S.W.2d at 213. Without actual knowledge that North American had been sued, the attorneys'
failure to answer could not have been intentional or consciously indifferent. Estate of Pollack,
858 S.W.2d at 391. We therefore conclude that North American adduced evidence negating its
intent or conscious indifference in failing to answer the Housers' suit.


MERITORIOUS DEFENSE


 We next consider the second element required by Craddock, whether North
American set up a meritorious defense. 133 S.W.2d at 126. A defendant sets up a meritorious
defense by alleging facts in its motion and supporting affidavits that, if true, would constitute a
defense to the cause of action asserted by the plaintiffs. Neither the trial court nor this Court may
consider controverting facts offered by the plaintiffs on the question of a meritorious defense. 
Director, State Employees Workers' Compensation Div. v. Evans, 889 S.W.2d 266, 270 (Tex.
1994); Ivy, 407 S.W.2d at 214.

 The Housers alleged in their petition that North American engaged in deceptive
trade practices by (1) representing that goods or services had sponsorship, approval,
characteristics, and benefits that they did not have and (2) breaching the warranty that the storage
facility was fit for its intended purpose. The Housers also alleged that North American acted
through its agents, that North American ratified its agents' acts, and that Pierce and North
American were so inextricably intertwined in the transaction as to be equally responsible for the
Housers' damages.

 A representative of North American, Janine Rudolph, states in her affidavit that
North American is a corporation engaged in interstate transportation and that North American Van
Lines of Texas, Inc., is a wholly owned subsidiary of North American that operates entirely
within Texas. North American has no ownership interest in Pierce Moving. Rudolph states that
North American and Pierce Moving executed a limited agency agreement by which Pierce Moving
acts on North American's behalf to ship property interstate. Pierce Moving does not act as North
American's agent for intrastate shipments or for storing goods within Texas. Rudolph avers that
North American did not make any representation to the Housers about moving and storing their
goods.

 Rudolph further states in her affidavit that the only document North American knew
of that evidenced the transaction was an "Estimated Cost of Services." This document, a copy
of which is attached to her affidavit, names Pierce Moving and Storage as the estimating agent and
North American Van Lines of Texas as the carrier. The form appears to be printed by North
American Van Lines of Texas, carrying at the top the address of "NATEX; North American Van
Lines of Texas." The form also carries a logo with the name "North American Van Lines"
written under it.

 From the "Estimated Cost of Services" and the chronology of events recited in
Rudolph's affidavit, it appears that North American first knew that the Housers' goods were
moved and stored when it received a demand letter dated September 8, 1994, from the Housers'
counsel. North American consistently maintained from this time forward that it did not move the
Housers' goods or participate in the transaction.

 Perry Pierce states in his affidavit that Pierce Moving, a company independent from
North American, was authorized pursuant to a limited agency agreement to act on North
American's behalf for interstate moves only. He states that the Housers' goods were moved and
stored solely within Texas. Pierce avers that all communications with the Housers about moving
and storing their goods were made on behalf of Pierce Moving either by himself or by another
representative of Pierce Moving, Merle Jones. Pierce signed the "Estimated Cost of Services"
as president of Pierce Moving and not as an agent of North American. He states that he took no
action that would lead the Housers to believe that North American was involved in the transaction.

 North American offered prima facie evidence, through the limited agency contract
and the "Estimated Cost of Services," that it was not involved in moving and storing the Housers'
goods. North American also offered some evidence that, in this transaction, Pierce did not act
or speak on its behalf. North American showed that Pierce did not try to make the Housers
believe that North American was involved in the transaction. As against the claim that it and
Pierce were inextricably intertwined, North American offered prima facie evidence that it was an
entity separate from both Pierce Moving and North American Van Lines of Texas and, again, that
it was not involved in moving and storing the Housers' goods. See Knight v. International
Harvester Credit Corp., 627 S.W.2d 382, 389 (Tex. 1982). North American further offered some
evidence that it did not ratify any act of Pierce once it knew about the transaction. We therefore
determine that North American set up a meritorious defense to the Housers' claims.



DELAY OR PREJUDICE


 Finally, we consider the third element of Craddock, whether granting North
American's motion to set aside would cause delay or injury to the Housers. 133 S.W.2d at 126. 
North American represented in its motion that granting the motion would cause no delay or injury. 
In its affidavit, North American offered to reimburse the Housers for all expenses incurred in
obtaining the default judgment and to proceed to trial as soon as it was set. These representations
shifted the burden to the Housers to prove injury. Estate of Pollack, 858 S.W.2d at 393.

 The Housers alleged in response that filing the motion thirteen days after North
American learned of the default judgment constituted delay as a matter of law. They point out
in affidavits that proving the cause of the fire would become more difficult over time and that,
because they have been without their belongings since July 1994, any delay will harm them. The
Housers further aver that Pierce's attorney had moved to transfer venue, necessitating a hearing
before trial could occur.

 The decision whether to grant a new trial rests in equity and depends on the facts
of the individual case. The reason for shifting the burden to the plaintiffs to prove injury, once
the defendant alleges lack of injury, is that the facts of injury are particularly within the plaintiffs'
knowledge. Cliff v. Huggins, 724 S.W.2d 778, 779 (Tex. 1987). We therefore reject the claim
that North American delayed as a matter of law in moving to set the judgment aside. That the
Housers will lose the economic benefit of the default judgment and will generally encounter more
difficulty in proving their claim does not constitute the sort of undue delay or injury against which
this element of Craddock protects. Jackson v. Mares, 802 S.W.2d 48, 52-53 (Tex. App.--Corpus
Christi 1990, writ denied). Because the Housers nonsuited Pierce, his intention to move to
transfer venue of the cause does not appear relevant. We conclude that the Housers have not
overcome North American's negation of delay or injury to the Housers.




CONCLUSION


 Having determined that North American met each element of the Craddock test,
we sustain point of error one. Our disposition of this point renders it unnecessary to address
North American's second point of error. We reverse the judgment of the trial court and remand
the cause for a trial on the merits.



Before Justices Powers, Aboussie and Kidd

Reversed and Remanded

Filed: March 6, 1996

Do Not Publish