## E. J. KINKLER ET AL. V. FRANK JUNICA.

### No. 3250.

1. **Estoppel—Directors Acting Ultra Vires.**—Defendants, directors in a private corporation, when sued for money the plaintiff, a stockholder, had been induced to deposit with the company, then insolvent, by the representations of the defendants, they having accepted the deposits and applied them to the payment of a debt for which they were sureties, are estopped from setting up as a defense in a suit to charge ·them therefor, their want of authority to receive the deposits.

2. **Liability of Directors—Case Adhered to.**—Seale v. Baker, 70 Texas, 286, adhered to, as to liability of directors; that they are personally liable to persons who may sustain loss in consequence of false representations made by such directors to them or to the public at large, when such representations are fraudulently and designedly made, or when ignorantly made concerning facts susceptible of knowledge, and of which it is the official duty of such directors to obtain correct information.

3. **Stockholders' Rights.**—That plaintiff was a stockholder and had access to the books of the concern and the means of knowing its true condition, does not of itself prevent a recovery against directors. Such facts with others go to the jury to determine their liability.

4. **Rates of Interest—Remittitur.**—It was error in the charge to allow interest at 10 per cent in such case; but when the error was shown in motion for new trial the plaintiff had the right by remitting the excess over 8 per cent to cure the error.

5. **Verdict Sufficient.**—Action against seven defendants to recover money deposited in the corporation of which they were directors, charging fraud against them. A verdict for plaintiff was rendered against four of the defendants. Such verdict was sufficient to support a judgment against the four named, and for the others as against the plaintiff.

6. **Fact Case.**—See facts held sufficient, although conflicting, to sustain a verdict against the appellants, directors of a corporation, at suit of a stockholder.

APPEAL from Fayette. Tried below before Hon. H. TEICHMUELLER. The opinion states the case.

*J. Lane,* for appellants.—1. The appellee was a stockholder and member of the Fayette County Alliance Co-operative Association, had free access to its books, by-laws, and regulations, and did know or could have known the condition of the corporation by the use of ordinary care and prudence. He knew or should have known that it was unlawful for him to make the loan he did make to the corporation through its business manager, A. J. May. If he did so even at the suggestion and request of defendants, it was an unlawful act, and he can not hold the defendants liable as directors. It was a matter outside of their duty as directors. Cates v. Sparkman, 73 Texas, 619; Seale v. Baker, 70 Texas, 283.

2. When a case is tried by a jury the judgment rendered by the court must be in conformity with and based upon their verdict. No other judgment would be legal, and to be a final judgment the verdict and judgment must dispose of all the issues submitted and of all the parties interested and before the court. This was not done in this cause as to the defendants William Tubbs, August Steinemann, and Joseph Stavinoha. Levy v. McDowell, 45 Texas, 220; Kerr v. Hutchins, 46 Texas, 384; Mays v. Lewis, 4 Texas, 38.

3. A judgment based upon a verdict, on motion of the losing party should be set aside and a new trial granted whenever it is shown that it was not warranted by the evidence, or when it does not respond to the issues submitted to the jury by the charge of the court, or when it appears that injustice has been done, or when it appears that the jury acted recklessly or so ignorantly as to indicate that they did not properly consider the law and the facts. Railway v. Hathaway, 75 Texas, 557; Kauffman & Runge v. Armstrong, 74 Texas, 65; Kerr v. Hutchins, 46 Texas, 384.

*W. S. Robson* and *J. T. Duncan,* for appellee, combatted the propositions argued by appellants.

GARRETT, PRESIDING JUDGE, *Section B.*—Frank Junica brought this suit against appellants and others, as directors of the Fayette County Alliance Co-operative Association, a private corporation formed

under the general incorporation law of the State, for personal recovery of them for certain deposits of money which he alleged he had been induced to make with said association by the false and fraudulent statements and representations of the defendants as to its solvency, and which had been lost by reason of the insolvency of said association.

Defendants pleaded a general demurrer, general denial, and especially denied that they had ever in any manner deceived the plaintiff or made any representations as to the solvency of said corporation; either to him or to the public, or that they had ever solicited loans or deposits from plaintiff or the public. They averred, that at the date of the alleged deposits and for a long time prior thereto plaintiff was a member of the association and had the right to inspect all the books, in which its true condition could have been discovered.

On December 4, 1890, the case was tried by a jury, and resulted in a verdict and judgment against four of the defendants, who have appealed.

The association was incorporated December 10, 1887, "for the purchase and sale of agricultural and farm products, goods, wares, and merchandise, and owning and managing a mercantile establishment upon a co-operative plan of buying and selling such real estate and other property as may be necessary to promote the object.of its creation, and of transacting any and all kinds of business incident or appertaining thereto, for the mutual profit and benefit of its stockholders, who are members of the Farmers Alliance." The by-laws gave the directors "charge of all the property of the association and the general supervision of the business," with power to appoint a manager and to employ salesmen, subject to approval of the association. They provided, that the directors should, as often as they deemed necessary, examine all the books, accounts, and papers of the association, or those connected with the same, its officers, agents, and employes, and report to the association at its regular meetings. The directors were authorized "to receive on deposit such sums of money as may be offered to the association for its use by members of the alliance, not to exceed $500 from one depositor, nor for a shorter time than one year, on such terms as may be agreed upon; provided a higher rate of interest than 10 per cent shall not be given."

Plaintiff deposited with the association $1100, as evidenced by its three deposit receipts, as follows: (1) $400, September 26, 1888, payable December 1, 1888, with 10 per cent interest; (2) $150, of the same date and to the same effect; (3) $550, September 28, 1888, and to the same effect. All of said receipts were signed by A. J. May, as manager. Plaintiff was a stockholder in the association. On November 28, 1888, the association made an assignment for the benefit of its creditors, and this suit was filed April 10, 1889.

Among other things, plaintiff alleged in his petition that the false representations as to the solvency of the association were made to

enable certain of the defendants to save themselves with respect to debts of the association for which they were sureties; and it was shown by the evidence that the money received from plaintiff was used in the purchase of cotton, which was shipped to J. S. Rogers & Co., of Galveston, and the proceeds went toward the payment of a note for $2500 on which the directors were sureties.

Appellants urge, that because the directors had no authority under the by-laws of the association to borrow more than $500 from one person or for a shorter time than one year, they should not be held individually liable for the deposits made by the appellee, although they were induced by false statements made by the directors, if such false statements were not knowingly made by the directors, or by either of them, with intent to defraud.

A special instruction to this effect requested by the defendants was refused by the court. Defendants having accepted the deposits and applied them to the payment of a debt for which they were sureties, are estopped from setting up as a defense to a suit to charge them therefor personally their want of authority to receive the deposits. The charge of the court correctly stated the law as to the personal responsibility of the defendants as directors of the association to be, that they "are personally liable to persons who may sustain losses in consequence of false representations made by such directors to them or to the public at large, when such representations are fraudulently and designedly made, or when ignorantly made, concerning facts susceptible of knowledge, and of which it is the official duty of such directors to obtain correct information." Seale v. Baker, 70 Texas, 286. The duty of the plaintiff to exercise reasonable prudence in his dealing with the association was properly submitted to the jury. The fact that he was a stockholder in the association and could have had access to the books showing its condition, and knew the provision of the by-laws with respect to the authority of the directors to receive on deposit only a limited amount of money for not less than a limited time, does not deprive the plaintiff of the right to recover. Such facts go to the jury for a determination of all the issues under proper instructions from the court. A stockholder in a corporation has as much right to protection against the fraudulent acts of the trustees or directors as any one else, if indeed he has not more right, although on account of his access to the books he may be held to greater care in his dealings with the corporation.

The court instructed the jury that they might find interest at the rate of 10 per cent per annum if they should return a verdict against the defendants. This objection to the charge was presented to the court below in the motion for a new trial, and was met by the plaintiff with a remitter of an amount sufficient to make the rate 8 per cent. The verdict does not show the process by which it was reached, nor

the rate of interest allowed; but we think it sufficiently appears from the record that the remitter made by the plaintiff covered any excess of interest that may have been allowed.

There were seven defendants, viz., Windmeyer, Kinkler, Glass, Gallia, Tubbs, Steinemann, and Stavinoha, and the jury returned a verdict in favor of the plaintiff against the four first named and said nothing of the other three. Judgment was entered against the four named in the verdict, and in favor of the others. It is contended that the verdict does not authorize the judgment. The effect of the verdict was a finding in favor of the remaining defendants, and judgment was properly entered in their favor. Railway v. James, 73 Texas, 12.

We think that the verdict of the jury was clearly responsive to every issue in the case, and that the excess in the amount was cured by the remitter entered by the plaintiff in the court below. But it is further contended by the appellants, that it is contrary to the evidence. Reviewing the evidence briefly, we find that the association was incorporated in December, 1887. At a meeting of the board of directors held May 7, 1888, at which the appellants were present, the object of the meeting was stated to be "to investigate the truth and substance of certain rumors and reports detrimental to the management of the co-operative store." The board went into secret session, and afterward resolved to take an inventory of the stock and books and accounts, and thoroughly investigate the standing and management of the store. They spent May 7 and 8 in the investigation, and placed of record a balance sheet showing excess of assets over liabilities of $3066.80, and net profits of $1000 on an original investment of $2066.80; and adopted a resolution, which was put on record, that after a strict and thorough investigation they found the above statement true, and complimented the manager "upon the zealous, honest, and efficient management." August 10, 1888, there was a called meeting of the directors, and Gallia and Windmeyer were appointed a committee to examine the books of the manager. Assets were shown to be short of liabilities $228.55; and it does not appear from this statement that the stock was charged to account of liabilities. The assets were stated to be $9995.09, including book accounts; and debts by bill and notes, $10,224.64. At this time the association was clearly insolvent, and the defendants were sureties upon a note to J. S. Rogers & Co. for $2500. They met again in less than two months (September 26) and investigated, and declared that there were total net assets above liabilities to the amount of $3448.20. On this day they borrowed the money from plaintiff and used it in the discharge of their indebtedness to J. S. Rogers & Co. On November 16 the stockholders met, and, as one of the witnesses testified, the directors said that they only wanted about $500 to take up the Rogers note; that it was the only claim pushing them; and that with money enough to tide this over the business was all right and in good

condition.    On the 24th of November the directors met and made an assignment.

Plaintiff testified, that he had a talk with Gallia, Kinkler, and the manager (May) about lending his money, and that Gallia told him that they were just through examining into the affairs, that the association was solvent, and that if he had money to lend he would lend it to the association.    Both of them assured him that the business was all right and he would be secure; that when he agreed to let them have the $1100, which was on September 26, he did all his talking with Gallia and Kinkler, but that Glass, Windmeyer, and Steinemann were also present; that Gallia acted as spokesman, as plaintiff spoke only Bohemian, which Gallia also spoke.    Plaintiff paid the $400 right then and the $150 in the afternoon of the same day; and in accordance with the arrangement already made, he paid the $550 on the 28th of September.    There is a conflict in some of the testimony, but we are of the opinion that it is sufficient to support the verdict of the jury.    The verdict of the jury is not without testimony to support it, and it will not be set aside, although the preponderance of the evidence may appear to be against it.

The judgment of the court below should be affirmed.

*Affirmed.*

Adopted March 22, 1892.